IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------
W.R., *a minor child*, et al.,

                            Plaintiffs,

            -vs-

STATE OF OHIO DEPARTMENT OF
HEALTH,

                            Defendants.
------------------------------------------------

: CASE NO. 1:14 CV 02075
:
: <u>MEMORANDUM OF OPINION AND</u>
: <u>ORDER GRANTING THE</u>
: <u>DEFENDANTS' MOTION TO DISMISS</u>

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter comes before the Court on a motion to dismiss filed by defendants State of Ohio Department of Health and Wendy Grove, Ohio's Individuals with Disabilities Education Act Part C Coordinator (collectively, "defendants"). The plaintiffs have filed a brief in opposition, and the defendants have replied. For the reasons that follow, the defendants' motion will be granted.

I.

The plaintiff W.R. is a child with moderate to severe autism on whose behalf his parents N.R. and G.R. brought this lawsuit. (Complaint, ¶¶11,12). According to the

complaint, defendant State of Ohio Department of Health is the agency that operates Ohio's Individuals with Disabilities Education Act ("IDEA") Part C system. The program is called "Help Me Grow," and it is operated under contract with the United States of America. (Complaint, ¶13). Defendant Wendy Grove is Help Me Grow's manager and policymaker. (Complaint, ¶14). The purpose behind IDEA Part C and Help Me Grow is "to enhance the development of infants and toddlers with disabilities, to minimize their potential for developmental delay, and to recognize the significant brain development that occurs during a child's first 3 years of life." 20 U.S.C. § 1431. According to the complaint, the State of Ohio contracts with third party service providers to fulfill this mission. (Complaint, ¶13).

The plaintiffs allege that W.R.'s pediatrician referred W.R. to Help Me Grow, and W.R. was declared eligible for limited services in December 2011. (Complaint, ¶18). W.R.'s parents expressed concern to Help Me Grow that W.R. had autism, but Help Me Grow did not provide him an autism assessment. (Complaint, ¶19)

On August 28, 2012, W.R.'s pediatrician referred W.R. to Nationwide Children's Hospital in Columbus, Ohio for an autism assessment, and W.R.'s parents informed Help Me Grow that they had arranged for the private assessment. (Complaint, ¶23). According to the complaint, Help Me Grow encouraged and induced W.R.'s parents to cancel the private assessment, which they did. (Id.). The assessment was ultimately rescheduled, but the cancellation caused a several month delay in obtaining services for W.R. (Id.). Nationwide eventually conducted the assessment and concluded that W.R. had autism, as he showed significant impairment in socialization and communication skills and he engaged in repetitive/restrictive behaviors. (Complaint,

2

¶26). Nationwide recommended that W.R. "[p]articipate in autism-specific programming based on principles of applied behavior analysis." (Id.).

The plaintiffs maintain that applied behavior analysis therapy is a necessary treatment for children with autism. (Complaint, ¶45). Despite their efforts to obtain applied behavior analysis therapy for W.R. from Help Me Grow, they were repeatedly informed that Ohio's Help Me Grow program does not provide it. (Complaint, *passim*). Instead, Help Me Grow provided "generic" services for five hours per month. (Complaint, ¶51). The plaintiffs maintain that these services were inadequate, and as a result, they say, W.R. made little progress overcoming his disability. (Id.). Eventually, in November 2013, when W.R. was two-and-a-half years old, Help Me Grow began providing him with applied behavior analysis therapy. (Id.). The plaintiffs' complaint indicates that since starting applied behavior analysis therapy, W.R. has made significant progress. (Id.).

According to the complaint, the decision by Help Me Grow to belatedly provide ABA therapy came on the heels of another lawsuit filed in the Southern District of Ohio, in which the Ohio Department of Health was ordered to provide applied behavior analysis therapy to another child with autism. (Complaint, ¶¶54, 56, 58). The plaintiffs also direct the Court's attention to a number of letters that the United States Department of Education ("ED") sent to the State of Ohio while the Southern District lawsuit was pending, which allegedly indicate ED's concern that Ohio was not properly fulfilling its responsibilities under IDEA Part C. (Complaint, ¶¶65-74). In particular ED stated that

3

> based on our review of the pending cases and the underlying due process decision, OSEP is concerned that the State is not implementing the IDEA Part C requirements regarding the State's responsibility to ensure the availability and provision of early intervention services promptly, such as applied behavioral analysis (ABA) therapy to infants and toddlers with disabilities . . .

(Complaint, ¶71).

On September 18, 2014, the plaintiffs filed the instant lawsuit, alleging that the defendants wrongfully denied W.R. applied behavior analysis therapy as mandated by Part C of the IDEA, 20 U.S.C. § 1431, *et seq*. On this basis, the plaintiffs allege claims under the IDEA (counts 1 & 2), the Rehabilitation Act (count 3), and the Americans with Disabilities Act (count 4). They also bring federal constitutional claims under 42 U.S.C. § 1983, including deprivation of property without due process (count 5) and violation of equal protection (count 6). They further bring state law claims including breach of public trust fiduciary duty (count 7) and intentional infliction of emotional distress (count 8).

The plaintiffs seek a declaration that the defendants violated the rights of infants and toddlers with disabilities when they categorically excluded applied behavior analysis therapy from early intervention services; $500,000 funding for compensatory services to help W.R. achieve the developmental level he otherwise would have achieved had the defendant not deprived him of applied behavior analysis therapy; reimbursement for services for which the plaintiffs paid and for which the defendants should have paid; compensatory damages; and fees and costs. (Complaint, Prayer for relief, p. 23-24).

II.

The defendants move to dismiss the complaint on the ground that the plaintiffs have not properly exhausted their administrative remedies. As stated in 34 C.F.R. 303.448(e),

> [n]othing in this part restricts or limits the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under these laws seeking relief that is also available under section 615 of the Act, the procedures under §§ 303.440 and 303.446 must be exhausted to the same extent as would be required had the action been brought under section 615 of the Act.

34 C.F.R. § 303.448. Thus, plaintiffs seeking to enforce their rights under the IDEA "must exhaust their administrative remedies before bringing suit in federal court to obtain relief that is also available under the IDEA." Covington v. Knox Cnty. Sch. Sys., 205 F.3d 912, 915 (6th Cir. 2000), amended on denial of reh'g (May 2, 2000). Further, some courts require exhaustion of administrative remedies even when the plaintiffs assert non-IDEA causes of action. See N.B. by D.G. v. Alachua Cnty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996) (requiring exhaustion where plaintiff asserted § 1983 claims for violations of IDEA). "The purpose of the exhaustion rule is to permit agencies to exercise discretion and apply their expertise, to allow the complete development of the record before judicial review, to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors.". Urban by Urban v. Jefferson Cnty. Sch. Dist. R-1, 89 F.3d 720, 724 (10th Cir. 1996).

In this instance, the plaintiffs bring two claims under the IDEA, and it is undisputed that administrative remedies have not been exhausted. The plaintiffs argue, however, that exhaustion is not required in this instance, because the administrative process would be futile. Exhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights. See Honig v. Doe, 484 U.S. 305, 326-27 (1988); Crocker v. Tennessee Secondary Sch. Athletic Ass'n, 873 F.2d 933, 936 (6th Cir.1989). The burden of demonstrating futility or inadequacy rests on the party seeking to bypass the administrative procedures. See Honig, 484 U.S. at 327.

The plaintiffs here contend that exhaustion of administrative remedies would be futile because the defendants engaged in a systemic violation of W.R.'s rights, and they claim that an administrative hearing officer is without authority to remedy the defendants' broad-based injurious conduct.

"Administrative remedies are generally futile or inadequate when plaintiffs allege 'structural or systemic failure and seek systemwide reforms.'" Urban, 89 F.3d at 725. In this case, the plaintiffs cannot avoid the exhaustion requirement simply by claiming that the defendants' wrongful conduct was systemic. While the complaint repeatedly refers to the systemic shortcomings of Ohio's implementation of IDEA Part C, it is not apparent that the plaintiffs are "seek[ing] systemwide reforms." Rather, the basis for liability in this case is the defendants' wrongful decision to withhold applied behavioral analysis therapy from one child, W.R, and the relief sought by the plaintiffs involves compensatory services and money damages in relation to that decision. Moreover, while the plaintiffs suggest that they plead on behalf of all infants and toddlers with autism in Ohio, it is not evident that the plaintiffs have standing to do so. Therefore, the

Court must reject the plaintiffs' contention that exhaustion is not required because Ohio engaged in systemic wrongful conduct.

The plaintiffs also argue that exhaustion would be futile because W.R. has aged out of the Help Me Grow program, and they maintain that because his damages are entirely in the past, only money damages can make him whole. In support, the plaintiffs cite Covington v. Knox County Sch. Sys., 205 F.3d 912, 917 (6th Cir. 2000), in which a panel of the Sixth Circuit held that exhaustion is futile when damages are the only suitable remedy for the plaintiff's alleged injuries and damages are unavailable through the administrative process. The plaintiff there alleged a number of constitutional violations based on various acts of wrongdoing by the defendants, which included locking the plaintiff in a time-out room for several hours at a time without supervision. Because the plaintiff in that case had graduated from his special education school, the court held that money damages were the only remedy that could make him whole, rendering the exhaustion of administrative remedies futile.

Covington is distinguishable from the present case. Here, unlike Covington, the plaintiffs' alleged damages are not wholly in the past, as they seek prospective relief in the form of compensatory education services. (See Complaint ¶¶80-82; Prayer for relief). Although it is undisputed that W.R. has aged out of the program, the plaintiffs here do not make the case that compensatory education services is a form of relief that would be unavailable in the administrative process. It is undisputed that such relief may be available through the administrative process. See S.E. v. Grant Cnty. Bd. of Educ., 544 F.3d 633, 643 (6th Cir. 2008) (holding that the plaintiff's claim for compensatory education services should be addressed initially through the administrative process).

7

And the plaintiffs have not shown that such relief would be unavailable to them, if they were to pursue administrative remedies.

Finally, the plaintiffs argue that exhaustion is not necessary because the administrative hearing officer would not have jurisdiction to hear the plaintiffs' constitutional claims or their claims under the Americans with Disabilities Act or the Rehabilitation Act. This argument has no merit. All of the plaintiffs' claims are based on the same set of operative facts: that the defendants deprived W.R. of necessary early intervention services. The plaintiffs may not avoid the exhaustion requirement simply by recasting their IDEA claims as claims under the ADA, Rehabilitation Act, or the federal constitution. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 116 (2d Cir. 2004) (holding that the plaintiffs claims under the Rehabilitiation Act, the ADA, and Section 1983, which mirrored the plaintiffs' IDEA claim, were subject to the exhaustion requirement). "[W]hen parents choose to file suit under another law that protects the rights of handicapped children—and the suit could have been filed under the [IDEA]—they are first required to exhaust the [IDEA]'s remedies to the same extent as if the suit had been filed originally under the [IDEA]'s provisions." Mrs. W. v. Tirozzi, 832 F.2d 748, 756 (2d Cir.1987). Therefore, because the plaintiffs have not exhausted their administrative remedies, they may not independently pursue their non-IDEA claims in this instance.

8

### III.

For the reasons stated above, the defendants' motion to dismiss is granted.

IT IS SO ORDERED.

/s/ Lesley Wells
UNITED STATES DISTRICT JUDGE

Date: August 27, 2015

9